IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES WILLIAM HESLEP, and
CAREY WATERS HESLEP,

       Plaintiffs,

v.                  //   CIVIL ACTION NO. 1:11CV56
                            (Judge Keeley)

AMERICANS FOR AFRICAN
ADOPTION, INC.; CHERYL
CARTER-SHOTTS; and
BOARD OF DIRECTORS, AMERICANS
FOR AFRICAN ADOPTION, INC.,

       Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' FIRST MOTION
TO DISMISS [DKT. NO. 42], DENYING DEFENDANTS' SECOND MOTION TO
DISMISS [DKT. NO. 56], AND SCHEDULING A SCHEDULING CONFERENCE

      On January 30, 2012, the defendants, Cheryl Carter-Shotts ("Carter-Shotts"), Americans for African Adoption, Inc. ("AFAA, Inc."), and its Board of Directors ("the Board") (collectively, "AFAA"), filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2),(4),(5), and (6) and 4(m). On May 8, 2012, AFAA filed a second Motion to Dismiss pursuant to Rule 12(b)(7). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** AFAA's first Motion to Dismiss (dkt. no. 42), and **DENIES** its second Motion to Dismiss (dkt. no. 56).

HESLEP v. AFAA                                         1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

I.

A.

In the summer of 2007, the plaintiffs, James and Carey Heslep ("the Hesleps"), decided to adopt a child from the Republic of Uganda ("Uganda"). According to the Hesleps, after considering several agencies and speaking with AFAA Inc.'s President and Managing Director, Carter-Shotts, they entered into an "illusory contract" with AFAA on August 6, 2007 under which AFAA would provide adoption services to the Hesleps in both the United States and Uganda. (Dkt. No. 3 at ¶ 19). To facilitate the international adoption process, AFAA identified Joseph Kagimu ("Kagimu"), a Ugandan citizen, as an AFAA employee who would coordinate the adoption in Uganda.

Following several months of preparation by the Hesleps, including undergoing an adoptive home study and petitioning for advanced processing ("the petition") through the United States Citizenship and Immigration Services ("USCIS"), Carter-Shotts informed them on May 10, 2008 that AFAA had identified an orphaned boy named "Sam" who met the approval criteria in their home study and was living in a Ugandan orphanage operated by AFAA. Carter-Shotts sent them information that indicated Sam's paternal grandmother had brought him to the AFAA orphanage after his father

**HESLEP v. AFAA**                                                      **1:11CV56**

<u>MEMORANDUM OPINION AND ORDER</u>

had died while serving in the military, and his mother had died in an accident.

The Hesleps agreed to proceed with the adoption and, on May 10, 2008, began supporting Sam through AFAA foster care, paying $200 per month to cover his housing, food, healthcare, and schooling. They also began to develop a personal relationship with Sam; over the next fifteen months, the Hesleps communicated with him through video and letters. Then, on September 4, 2009, Carter-Shotts informed the Hesleps that they needed to appear before the High Court of Uganda to be named Sam's legal guardians. Per Carter-Shotts's instructions, the Hesleps traveled to Uganda where Kagimu gave them physical custody of Sam on September 12, 2009. On September 17th, the High Court of Uganda named them Sam's legal guardians.

On September 29, 2009, when the Hesleps applied for an IR-4 visa for Sam from the United States Embassy in Uganda ("the Embassy"), the Embassy informed them that it was opening an investigation into irregularities in Sam's documents, specifically his parents' death certificates. While the investigation proceeded, James Heslep returned to the United States, and Carey Heslep remained in Uganda to care for Sam. Two weeks later, on October 15, 2009, the Embassy reported that Kagimu had forged the death

HESLEP v. AFAA                                              1:11CV56

## MEMORANDUM OPINION AND ORDER

certificates of Sam's parents. The Heslep later learned that Sam's parents are actually alive and that Kagimu is now imprisoned in Uganda on charges of fraud, forgery and embezzlement.

Carey Heslep returned to the United States on October 20th, leaving Sam in Uganda. On February 9, 2010, USCIS notified the Heslep that AFAA held no legal authority in Uganda to assist in the adoption; that AFAA had failed to obtain appropriate legal custody of Sam under Ugandan law; and that "AFAA, knowingly and admittedly, provided false death certificates for the birth parents of [Sam]." (Dkt. No. 45-2 at 2-3). On February 24, 2010, the Heslep withdrew their USCIS petition and, on April 1, 2010, returned Sam to the care of his biological grandmother in Uganda.

**B.**

On April 25, 2011, the Heslep filed this suit pursuant to 28 U.S.C. §§ 1331 and 1332 against the defendants, AFAA, Inc., Carter-Shotts, and AFAA's Board of Directors, which includes Carter-Shotts and individual members named Anne Duffus ("Duffus"), Anne Marie Merril ("Merril"), Temple Moorehead ("Moorehead"), and Suzanne Terrant ("Terrant"). In their complaint, the Heslep allege that the defendants' fraudulent actions and misrepresentations caused them to suffer emotional distress and financial losses, including more than $10,000 they paid to AFAA directly, and several thousand

4

## MEMORANDUM OPINION AND ORDER

dollars more in foster care expenses, adoption fees, and travel costs. They further claim that AFAA has defrauded at least five other couples in a similar manner and is part of an illicit enterprise that targets prospective adoptive parents. The Hesleps also allege that, to perpetrate its scheme, AFAA violated federal mail and wire fraud statutes, including 18 U.S.C. §§ 1341 and 1343.

Their complaint asserts nine causes of action: (1) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 and 1962, (2) fraudulent misrepresentation and inducement, (3) intentional infliction of emotional distress ("IIED"), (4) negligent hiring, (5) negligent supervision, (6) negligent retention, (7) negligent administration of a program, (8) negligent infliction of emotional distress ("NIED"), and (9) punitive damages.

On January 30, 2012,[1] the defendants filed a motion to dismiss the Hesleps' claims, arguing that (1) the Board should be dismissed because it lacks capacity to be sued, (2) the individual directors should be dismissed for lack of personal jurisdiction, immunity

---

[1] On July 22, 2011, Carter-Shotts filed a pro se Motion to Dismiss on behalf of herself and the other defendants. (Dkt. No. 13). Because Carter-Shotts is not an attorney, the Court advised her that she could not represent her co-defendants and granted the defendants leave to retain counsel. (Dkt. No. 38). Counsel for the defendants filed notices of appearance on January 30, 2012, along with their first Motion to Dismiss.

HESLEP v. AFAA                                              1:11CV56

## MEMORANDUM OPINION AND ORDER

from negligence liability under W. Va. Code § 55-7C-3 and Indiana Code § 23-17-13-1,[2] and improper service; (3) the fraud claim should be dismissed for failure to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b); and (4) the remaining claims should be dismissed for failure to state a cause of action. (Dkt. No. 42). The parties later agreed to attempt to resolve their dispute through mediation on April 23, 2012, but were unsuccessful. Then, on May 8, 2012, the defendants filed a second motion to dismiss, arguing that the plaintiffs had failed to join AFAA-Uganda, which they contend is a separate and distinct entity from AFAA and, thus, a necessary and indispensable party to this case. (Dkt. No. 56).

## II.

The Court considers first whether the Board of Directors has the capacity to be sued. AFAA argues that the Board must be dismissed because it is not a distinct legal entity subject to

---

[2] Although neither party has argued that Indiana law, or the laws of any state other than West Virginia, should apply in this case, the defendants contest the plaintiffs' negligence claims under both West Virginia and Indiana law, presumably because AFAA, Inc. is headquartered in Indiana. With respect to the other state law causes of action, e.g. fraud and intentional infliction of emotional distress, the defendants only advance arguments under West Virginia law.

Because there appears to be no dispute that the plaintiffs' claims arise in the Hesleps' home state of West Virginia and because the parties have not argued otherwise, the Court considers the sufficiency of the plaintiffs' state law claims under West Virginia law.

HESLEP v. AFAA                                                    1:11CV56

## MEMORANDUM OPINION AND ORDER

suit; the plaintiffs, however, maintain that the Board is a proper party to this case.

It is important to note that the plaintiffs have sued only the Board, and not its members in their individual capacities.[3] Although their complaint, under the heading "Parties," identifies Duffus, Merrill, Moorehead, and Terrant as individual directors (dkt. Do. 3 at ¶¶ 8, 9, 10, 11), the style of the case names only Carter-Shotts, AFAA, Inc., and its "Board of Directors" as defendants (id. at 1). Additionally, the plaintiffs concede that they served the "Board of Directors" at AFAA's headquarters in Indianapolis, but have made no attempt to serve the individual directors due to difficulties in ascertaining their identities. (Dkt. No. 45 at 18). Moreover, the complaint asserts no factual allegations against the individual directors and mentions them only twice: First, in Count One, as individuals comprising the alleged RICO enterprise (id. at ¶ 77); and second, in Count Seven, as members of the Board, which allegedly breached its duty to administer an international adoption program (id. at ¶ 129).

---

[3] On August 24, 2012, the plaintiffs filed a Motion for Leave to File an Amended Complaint (dkt. no. 77) seeking to join the individual directors as defendants. This matter is not fully briefed and will be addressed during the Scheduling Conference on September 17, 2012.

HESLEP v. AFAA                                          1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to Fed. R. Civ. P. 17(b), a non-corporate entity's capacity to sue and be sued is governed "by the law of the state where the court is located." In West Virginia, a corporate "board of directors is not a legal entity separate and apart" from the corporation itself and, thus, should not be named as a separate party. <u>Mainella v. Bd. of Trs.</u>, 27 S.E.2d 486, 488 (W. Va. 1943). This rule reflects the well-settled principle that "[t]he corporate entity does not exist separate from its board of directors." <u>Jule, Inc. v. Boggs</u>, 270 S.E.2d 679, 683 (W. Va. 1980). "[D]ue to the nature of the body that is a board of directors, any action of the board of directors is an action of the corporation." <u>Flarey v. Youngstown Osteopathic Hosp.</u>, 783 N.E.2d 582, 585 (Ohio 2002); <u>see also</u> <u>Willmschen v. Trinity Lakes Improvement Ass'n</u>, 840 N.E.2d 1275, 1280-81 (Ill. 2005) ("[The] belief that [a] board [of directors] is a separate entity capable of being sued is a misconception of what a board of directors is and how it functions within the corporate structure.").

Here, although AFAA, Inc. is a legal person incorporated under Indiana law, AFAA's Board of Directors is not a legal entity separate and apart from the corporation it directs. <u>See</u> <u>Mainella</u>, 27 S.E.2d at 488. As alleged in the complaint, AFAA, Inc. holds itself out as being controlled by the Board, so that its actions

8

HESLEP v. AFAA                                              1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

and those of the Board are one in the same. <u>See</u> <u>Flarey</u>, 783 N.E.2d
at 585. As such, the Board does not exist separate from AFAA, Inc.,
<u>see</u> <u>Boggs</u>, 270 S.E.2d at 683, and, thus, lacks capacity to be sued
under Fed. R. Civ. P. 17(b) and is dismissed.[4]

　　With respect to the defendants' motions to dismiss AFAA's
individual directors for lack of personal jurisdiction and improper
service of process, the Court has found that the plaintiffs have
not sued these persons. Therefore, the defendants' motions to
dismiss the individual directors are not ripe for review.

### III.

　　The Court turns next to the defendants' argument that it
should dismiss the case pursuant to Fed. R. Civ. P. 12(b)(7)
because the plaintiffs' failed to join a necessary party. AFAA
argues that Kagimu was an employee of AFAA-Uganda, an entity
distinct from AFAA-United States, and this case should not proceed
in the absence of AFAA-Uganda.

---

[4] While the Court agrees with the plaintiffs that, under W. Va. Code
55-7C-3, a qualified director of a nonprofit organization may be exposed
to liability "when he or she is found to be grossly negligent," the
statute permits liability for <u>individual</u> directors, not the board as a
separate entity. W. Va. Code. 55-7C-2 (defining "qualified director" as
"an individual who serves without compensation for personal services as
an officer, member or director of a board, commission, committee, agency
or other nonprofit organization which is a volunteer organization or
entity").

**HESLEP v. AFAA**                                                          **1:11CV56**

<u>MEMORANDUM OPINION AND ORDER</u>

### A.

Fed. R. Civ. P. 19 establishes a two-step inquiry to determine whether an action may continue without the joinder of additional parties. <u>Nat'l Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.</u>, 210 F.3d 246, 249 (4th Cir. 2000). The Court first must determine whether the absent party is "necessary" to the action such that, in the party's absence, "the court cannot afford complete relief." Fed. R. Civ. P. 19(a). The Court must then determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 outlines several factors for the Court to consider in determining whether a necessary party's absence warrants dismissal, including "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," the available options for mitigating any prejudice, the adequacy of a judgment in the necessary party's absence, and "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." <u>Id.</u>

"Dismissal of a case is a drastic remedy, however, which should be employed only sparingly." <u>Nat'l Union Fire Ins.</u>, 210 F.3d at 250 (quoting <u>Teamsters Local Union No. 171 v. Keal Driveway Co.</u>, 173 F.3d 915, 918 (4th Cir. 1999). "In determining whether to

HESLEP v. AFAA                                                    1:11CV56

## MEMORANDUM OPINION AND ORDER

dismiss a complaint, a court must proceed pragmatically, 'examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it.'" Id. The party moving for dismissal under Rule 12(b)(7) bears the burden of showing an absent party is necessary and indispensable. Branch Banking & Trust Co. v. First Am. Title Ins. Co., No. 5:11CV473, 2012 WL 529926, at *6 (S.D.W. Va. Feb. 17, 2012).

### B.

The defendants argue that the Hesleps wrongfully have conflated two separate and distinct business entities: AFAA-United States and AFAA-Uganda. They contend that, in 2007, Kagimu, who was at that time an administrator of the AFAA-supported orphanage in Uganda, unilaterally established a separate organization appropriating the AFAA name. In the defendants' view, Kagimu's company, which they call AFAA-Uganda, is responsible for any wrongdoing alleged in the complaint because, if Kagimu did forge death certificates for Sam's parents, he did so in his capacity as an employee of AFAA-Uganda, not AFAA-United States. Therefore, the defendants contend that AFAA-Uganda is both a necessary and indispensable party to this case because the Court cannot afford

HESLEP v. AFAA                                                1:11CV56

MEMORANDUM OPINION AND ORDER

complete relief among the existing defendants, who, in their view, are not liable for Kagimu's actions.

The defendants, however, have offered no support for their allegation that AFAA-Uganda exists as a distinct entity, and there are facts in the record controverting their claim. For example, in 2008, a year after Kagimu allegedly established AFAA-Uganda, the defendants prepared a power of attorney form for the Heslans, in which AFAA describes itself as a "not-for-profit, international adoption agency, and a Uganda registered NGO, based in Indianapolis, USA." (Dkt. No. 45-1). The form draws no distinction between an American and Ugandan AFAA. Instead, the company holds out Kagimu and Carter-Shotts as "Uganda and U.S. staff of 'Americans For African Adoptions, Inc.'" authorized to "prepare and sign all documents . . . [as] AFAA employees." Id.

These facts undermine the defendants' attempt to portray AFAA-Uganda as a distinct entity or subsidiary, much less one that is necessary and indispensable to this action. Even if AFAA-Uganda does exist, the defendants have not met their burden of showing why "the court cannot afford complete relief" in its absence. See Fed. R. Civ. P. 19(a). To the extent the Heslans' claims are based on Kagimu's wrongdoing, that is only one piece of a broader scheme of

12

HESLEP v. AFAA                                          1:11CV56

## MEMORANDUM OPINION AND ORDER

fraud alleged against all the defendants in both Uganda and the
United States.

Moreover, the defendants have not established how they would
be prejudiced, if at all, by the absence of AFAA-Uganda, which,
even if it does exist, is not the object of the plaintiffs' claims.
The defendants' argument that they are entirely dissociated from
Kagimu is unavailing and, to the extent they are prejudiced by his
absence, such prejudice does not justify the "drastic remedy" of
dismissing the plaintiff's case. See Nat'l Union Fire Ins., 210
F.3d at 250. Generally, courts have only found cause to dismiss a
case for failure to join a nondiverse party because the plaintiffs
have an alternative forum available in state court. See Freeman v.
Nw. Acceptance Corp., 754 F.2d 553, 560 (5th Cir. 1985). Such is
not the case here, where the plaintiffs have no alternate forum in
which to file suit. Joinder of AFAA-Uganda or Kagimu would be
infeasible in any court because Kagimu is imprisoned in Uganda.
Therefore, because dismissal of this case would leave the
plaintiffs without an adequate remedy for their claims, the Court
cannot in "equity and good conscience" dismiss their case for non-
joinder. See Fed. R. Civ. P. 19(b).

HESLEP v. AFAA                                          1:11CV56

MEMORANDUM OPINION AND ORDER

IV.

Next, the Court looks to the merits of the Hesleps' claims and AFAA's motion to dismiss under Fed. R. Civ. P. 12(b)(6). The defendants argue that none of the alleged causes of action states a plausible claim for relief.

A.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). In its determination, the Court must consider all well-pled factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). The Court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Fed. R. Evid. 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526

14

HESLEP v. AFAA                                              1:11CV56

### MEMORANDUM OPINION AND ORDER

n.1 (4th Cir. 2006)); see also Katyle v. Penn Nat. Gaming, Inc.,
637 F.3d 462, 466 (4th Cir. 2011).

### B.

As to Count One, AFAA contends that the plaintiffs have failed
to state a cause of action under RICO, 18 U.S.C. § 1964(a) and (c).
Subsections (a) and (c) of § 1964 both provide civil remedies for
violations of 18 U.S.C. § 1962, which, in pertinent part, provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity or collection
> of unlawful debt.

Id. § 1962(c).

The defendants argue that the Heslep's RICO claim fails to
allege (1) the existence of an "enterprise" distinct from the
individual defendants, (2) the predicate acts necessary to
constitute racketeering activity, and (3) a pattern of racketeering
activity.

### 1.

To sustain a cause of action under RICO, the plaintiff must
allege the existence of an "enterprise," which consists of "any
individual, partnership, corporation, association, or other legal
entity, and any union or group of individuals associated in fact

15

HESLEP v. AFAA                                              1:11CV56

## MEMORANDUM OPINION AND ORDER

although not a legal entity." 18 U.S.C. § 1961(4). An enterprise can exist as either a legal entity, or "merely a group of individuals associated in fact." United States v. Griffith, 660 F.2d 996, 999 (4th Cir. 1981). An "associated in fact" enterprise "requires proof of a 'common purpose' animating its associates, and this may be done by an 'on-going organization, formal or informal,' in which they function as a 'continuing unit.'" Id. at 1000 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

In this case, under RICO, the Heslops allege an associated in fact enterprise consisting of AFAA, Inc., Carter-Shotts, Kagimu, and individual members of AFAA's board of directors. The defendants argue that the individual board members cannot be part of a separate "enterprise" with AFAA, Inc. because the corporation necessarily functions through its employees and agents. They argue that all of the board members are part of one entity, AFAA, Inc., and thus, there is no distinct enterprise because "an individual cannot associate or conspire with himself." See River City Mkts, Inc. v. Fleming Foods W., Inc., 960 F.2d 1458, 1461 (9th Cir. 1992).

This Court addressed a similar argument in Cooke & Moses, LLC v. QSS-Engineered Systems Group, LLC, No. 1:06CV147, 2007 WL 2463288, at *6 (N.D.W. Va. Aug. 28, 2007), where it distinguished

HESLEP v. AFAA                                                    1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

the "intracorporate conspiracy doctrine" advanced by the defendants from a situation in which "an employee [] conducts the affairs of a corporation through illegal acts." <u>Id.</u> (citing <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 163 (2001)). In that instance, participants in a corporate enterprise may still qualify as distinct persons under RICO if they "conduct the corporation's affairs in a RICO-forbidden way." <u>Cedric</u>, 533 U.S at 163.

Here, the Hesleps have alleged facts sufficient to support a claim that "the individual defendants, in conjunction with the corporate defendants, are separate and apart from the illegitimate enterprise through which they allegedly sought to unlawfully defraud the plaintiffs." <u>Id.</u> at *7. They claim that Carter-Shotts and other employees used AFAA, Inc. to defraud prospective parents seeking to adopt children from Uganda. Moreover, they allege that Carter-Shotts co-mingled her personal funds with AFAA accounts, bolstering their claim that both the corporation and Carter-Shotts individually participated in the fraudulent scheme. Whether the individual employees acted within the scope of their employment and on behalf of the corporation is of no import because, taking the facts alleged as true and in the light most favorable to the plaintiffs, their employment promoted the "common purpose" of an illegitimate end. <u>See</u> <u>Griffith</u>, 660 F.2d at 999. Accordingly, the

17

HESLEP v. AFAA                                                    1:11CV56

MEMORANDUM OPINION AND ORDER

Hesleps have sufficiently plead the existence of an enterprise as required by 18 U.S.C. § 1961(4).

## 2.

The plaintiffs must also allege specific "predicate acts" of racketeering activity to sustain a RICO claim. Here, the Hesleps allege that the defendants engaged in at least fifteen instances of mail fraud and wire fraud between July, 2007 and September, 2009. (Dkt. No. 3 at ¶¶ 18, 30). Violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) constitute "acts of racketeering activity" under 18 U.S.C. § 1961(1)(B), but AFAA contends the plaintiffs have failed to plead each act with the requisite specificity.

To prove a violation of the mail or wire fraud statutes, the evidence must establish a scheme to defraud, the intent to defraud, and the use of the mails or wire. Tri-County Elec. Co., Inc. v. Dean, No. 92-85-E, 1994 WL 653489, at *4 (N.D.W. Va. Sept. 23, 1994) (citing United States v. Garner, 809 F.2d 1291, 1299 (7th Cir. 1989)). Where a plaintiff alleges fraud, pursuant to Fed. R. Civ. P. 9(b) "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally," but "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

HESLEP v. AFAA                                            1:11CV56

### MEMORANDUM OPINION AND ORDER

The Fourth Circuit has stated that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Where RICO claims are based on allegations of mail or wire fraud, "the plaintiff 'must have justifiably relied to his detriment on the defendant's material misrepresentation.'" GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001) (quoting Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996)). The heightened pleading requirements for fraud claims prompt a careful inquiry into the plaintiffs' mail and wire fraud allegations in Count One.

The Hesleps claim the defendants used emails, facsimiles, letters, and telecommunications to materially misrepresent (1) AFAA's legal authority to assist in adoptions in Uganda, (2) the success rate of AFAA adoptions, (3) Sam's status as an orphan, and (4) the authenticity of documents related to Sam's biological parents. Moreover, they claim the defendants acted with the specific intent of obtaining the plaintiffs' money or property.

HESLEP v. AFAA                                                    1:11CV56

### MEMORANDUM OPINION AND ORDER

The complaint alleges several facts in support of these claims, including: (1) the Heslepsʼ agreement to enter a contract with AFAA, Inc. on August 6, 2007 based on Carter-Shottsʼs "representations and assurances" that AFAA was "an established non-profit agency with a record of successful international adoption work" (dkt. no. 3 at ¶¶ 18, 19); (2) Carter-Shottsʼs telephone call on May 10, 2008 representing that AFAA could offer Sam for adoption (id. at ¶ 25); (3) written information sent by Carter-Shotts shortly after May 10, 2008, detailing the death of Samʼs parents (id. at ¶ 27); (4) AFAAʼs solicitation of fifteen $200 monthly payments to cover Samʼs foster care beginning on May 10, 2008 (id. at ¶¶ 28, 29); (5) Carter-Shottsʼs communication to the Hesleps on September 4, 2009 that they needed to travel to Uganda to be named Samʼs legal guardians (id. at ¶ 30); (6) and "numerous occasions" in which Carter-Shotts "assured the Hesleps that Joseph Kagimu was a trusted employee of AFAA and that his actions were consistent with instructions given to him by AFAA" (id. at ¶ 40).

These detailed allegations sufficiently describe the "time, place, and contents of the false representations" to satisfy Rule 9(b) as the claims pertain to the defendants Carter-Shotts and AFAA, Inc. See Harrison, 176 F.3d at 784. When read together, and in para materia with the plaintiffsʼ general averments of the

HESLEP v. AFAA                                              1:11CV56

MEMORANDUM OPINION AND ORDER

defendants' malicious intent throughout the complaint, these facts
state a plausible claim that Carter-Shotts, acting on behalf of
AFAA, Inc., used the mails or wire in an intentional scheme to
defraud the Heslops. See Dean, 1994 WL 653489, at *4.

**3.**

Finally, the plaintiffs must allege a "pattern of racketeering
activity" to establish their RICO claim. The Heslops allege that,
in addition to the numerous predicate acts relating to their
interactions with AFAA, the defendants also defrauded at least five
other prospective adoptive families in a similar scheme. AFAA
contends that the plaintiffs fail to establish a pattern of
activity because the majority of their claims concern a single
incident, and their allegations that AFAA defrauded other families
lack sufficient particularity.

A "pattern of racketeering activity" requires "at least two
acts of racketeering activity" within a ten-year period. 18 U.S.C.
§ 1961(5). While a minimum of two predicate acts is required, two
acts alone do not necessarily establish a pattern. Parker, 247 F.3d
at 549 (citing Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 n.14,
497 (1985)). To establish a pattern of racketeering activity, the
plaintiffs must show that the predicate acts are related and that

HESLEP v. AFAA                                           1:11CV56

MEMORANDUM OPINION AND ORDER

they "amount to or pose a threat of continued criminal activity."
H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Continuity refers "either to a closed period of repeated
conduct, or to past conduct that by its nature projects into the
future with a threat of repetition." Id. at 241. Closed-ended
continuity may be established by a "series of related predicates
extending over a substantial period of time." Id. at 242.
"Predicate acts extending over a few weeks or months and
threatening no future criminal conduct do not satisfy this
requirement." Id. Open-ended continuity may be established where,
for example, the "related predicates themselves involve a distinct
threat of long-term racketeering activity," or where the predicate
acts "are part of an ongoing entity's regular way of doing business
. . . or of conducting or participating in an ongoing and
legitimate RICO enterprise." Id. at 242-43.

The Fourth Circuit is "cautious about basing a RICO claim on
predicate acts of mail and wire fraud because it will be the
unusual fraud that does not enlist the mails and wires in its
service at least twice." Al-Abood v. El-Shamari, 217 F.3d 225, 238
(4th Cir. 2000) (internal quotations and citations omitted). RICO
liability is reserved for "ongoing unlawful activities whose scope

HESLEP v. AFAA                                                  1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

and persistence pose a special threat to social well-being."
<u>Menasco, Inc. v. Wasserman</u>, 886 F.2d 681, 684 (4th Cir. 1989).

Here, when considering the allegations in the complaint in the
light most favorable to the plaintiffs, they have established the
requisite continuity of racketeering activity. Although it is
questionable whether the instances of mail and wire fraud, as they
pertain to the Heslep's adoption alone, would be sufficient to
establish a pattern of conduct, the Court need not make that
determination because the plaintiffs have alleged something more -
they claim the defendants have defrauded at least five other
prospective adoptive families as part of the same fraudulent
scheme. If true, this would suggest a pattern of predicate acts as
"part of an ongoing entity's regular way of doing business." (Dkt.
No. 3 at ¶¶ 60, 64, 67, 79); <u>see</u> <u>H.J. Inc.</u>, 492 U.S. at 242-43.

Although the complaint itself is scant on details about these
other families' interactions with AFAA, the plaintiffs have since
supplemented the record with court documents related to these cases
that indicate Carter-Shotts and AFAA, Inc. faced similar
allegations of adoption fraud in South Dakota in May of 2010 (dkt.
no. 45-5), and in Michigan in June of 2010 (dkt. no. 45-3). Because
these documents are integral to the allegations in the plaintiffs'

HESLEP v. AFAA                                                    1:11CV56

MEMORANDUM OPINION AND ORDER

complaint, the Court may consider them when evaluating a motion to dismiss. See Philips, 572 F.3d at 180.

The claims in the Michigan and South Dakota cases bear sufficient similarity to the allegations in this case to support a plausible claim that the defendants have engaged in a pattern of racketeering activity giving rise to a RICO claim. Like the Hesleps, the plaintiffs in the cases in South Dakota and Michigan allege that Carter-Shotts and AFAA, Inc. misrepresented the orphaned status of Ugandan children whose parents were actually alive in order to misappropriate adoption fees and foster care expenses. (Dkt. No. 45-5). If true, such allegations would establish a pattern of related predicate fraudulent acts "whose scope and persistence pose a special threat to social well-being." Menasco, 886 F.2d at 681. Accordingly, the plaintiffs have alleged a plausible RICO claim under 18 U.S.C. § 1964(a) and (c).

## C.

With respect to Count Two, AFAA contends that the plaintiffs have failed to state a plausible claim of fraud under West Virginia law and under the heightened pleading requirements of Fed. R. Civ. P. 9(b). To establish a claim of fraud under West Virginia law, the plaintiffs must prove (1) the alleged fraudulent act is that of the defendant, (2) the act was material, false, and the plaintiff

24

HESLEP v. AFAA                                              1:11CV56

MEMORANDUM OPINION AND ORDER

justifiably relied upon it, and (3) the plaintiff suffered injury as a result of the act. Ashworth v. Albers Med., Inc., 410 F. Supp. 2d 471, 477 (S.D.W. Va. 2005) (citing Lengyel v. Lint, 280 S.E.2d 66, 67 (W. Va. 1981)). The Supreme Court of Appeals of West Virginia has consistently held that a fraud claim "must ordinarily be predicated on an intentional misrepresentation of a past event," and not on a misrepresentation as to future events or on promissory statements. Croston v. Emax Oil Co., 464 S.E.2d 728, 732 (W. Va. 1995); see also Janssen v. Carolina Lumber Co., 73 S.E.2d 12, 17 (W. Va. 1952). If the plaintiff can show that the defendant did not intend to fulfill a promise at the time it was made, however, "the nonperformance of the promise may constitute fraud." Dyke v. Alleman, 44 S.E.2d 587, 590 (W. Va. 1947).

    As noted earlier, Fed. R. Civ. P. 9(b) sets forth a heightened pleading standard for averments of fraud. Thus, while intent may be averred generally, circumstances, including the time, place, and contents of the misrepresentation, as well as the identify of the person who made it, must be pled with particularity. Harrison, 176 F.3d at 784.

    Here, the defendants argue that the plaintiffs' fraud claim only alleges that AFAA failed to fulfill its promise to assist the Heslens in completing a successful adoption. In their view, any

25

HESLEP v. AFAA                                                    1:11CV56

MEMORANDUM OPINION AND ORDER

forward-looking promissory statements made regarding Sam's adoption did not constitute fraud because they were not "predicated on an intentional misrepresentation of a past event." See Croston, 464 S.E.2d at 732. This argument understates the Heslep's' claims, however, which allege that the defendants Carter-Shotts and AFAA, Inc. (1) intentionally misrepresented material facts regarding their success with past adoptions, (2) AFAA's ability and legal authority to complete adoptions in Uganda, (3) Sam's status as an orphan, (4) the authenticity of documents relating to Sam's biological parents, and (5) the progress of their adoption process. (Dkt. No. 3 at ¶ 83). The plaintiffs support these averments with a considerable body of pre-discovery evidence, including official documents from AFAA and USCIS, as well as emails from AFAA staff members. (Dkt. Nos. 67-1, 67-2, and 67-3).

The plaintiffs' claims thus allege more than a mere failure to fulfill a future promise; they assert that the defendants knowingly made materially false statements about past events and present facts related to their adoption of Sam. The Heslep's allege that they relied on those misrepresentations and claim resulting damages. (Id. at ¶¶ 87, 90). As such, they have stated a plausible claim of fraud under West Virginia law. See Ashworth, 410 F. Supp. 2d at 477.

26

HESLEP v. AFAA                                                    1:11CV56

## MEMORANDUM OPINION AND ORDER

Furthermore, as already discussed in Section IV.B.2 of this Memorandum Opinion, the plaintiffs have sufficiently plead the "time, place, and contents" of the alleged misrepresentations to satisfy the heightened pleading requirements of Rule 9(b). See Harrison, 176 F.3d at 784. Contrary to the defendants' assertion that the plaintiffs fail to allege that Carter-Shotts knew certain statements were false when she made them, the complaint contains sufficient allegations of her malice, intent, or knowledge, which, under Rule 9(b) "may be averred generally." (Dkt. No. 3 at ¶ 85); Fed. R. Civ. P. 9(b). The complaint alleges that Carter-Shotts held herself out as President and Managing Director of AFAA and, in such capacity, represented that she knew the extent of AFAA's legal authority to conduct adoptions in Uganda, as well as the nature of her employees' activities there. (Dkt. No. 3 at ¶¶ 5, 18, 40, 83). Accordingly, the plaintiffs have properly stated a cause of action for fraud under Rule 9(b).

### D.

AFAA argues that Count Three should be dismissed for failure to state claim of intentional infliction of emotional distress. To establish a claim of outrage in West Virginia, the plaintiffs must show (1) that the defendants' conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency,

27

HESLEP v. AFAA                                                1:11CV56

## MEMORANDUM OPINION AND ORDER

(2) that the defendants acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from their conduct, (3) that the actions of the defendants caused the plaintiff to suffer emotional distress, and (4) that the emotional distress suffered by the plaintiffs was so severe that no reasonable person could be expected to endure it. Kowalyk v. Cnty. Comm'n of Hancock Cnty., No. 5:08CV181, 2011 WL 43027, at *8 (N.D.W. Va. Jan. 6, 2011) (citing Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 425 (W. Va. 1998)).

Here, the defendants argue that the complaint lacks the requisite specificity to sustain a claim of outrage because the plaintiffs have not established that Carter-Shotts knew her actions would cause the Hesleps emotional distress. However, the extensive facts alleged by the plaintiffs, including that the defendants intentionally victimized prospective adoptive parents for pecuniary gain, are sufficient to survive a motion to dismiss at the pleading stage.

### E.

In Counts Four, Five, Six, and Seven, the plaintiffs allege several theories of negligence based on the defendants' negligent hiring, supervision, and retention of AFAA employees, as well as

28

HESLEP v. AFAA                                          1:11CV56

## MEMORANDUM OPINION AND ORDER

their negligent administration of an international adoption
program. AFAA argues that each count of negligence fails because
the plaintiffs neither alleged any special relationship between
themselves and the defendants nor a physical injury that resulted
from the defendants' actions. They also argue that Count Seven
fails because negligent administration is not a cognizable claim
under West Virginia law.

### 1.

As to Counts Four and Six, West Virginia does recognize a
cause of action based upon negligent hiring and retention. See
McCormick v. W. Va. Dep't of Pub. Safety, 503 S.E.2d 502, 506-07
(W. Va. 1998); and State ex rel. West Virginia State Police v.
Taylor, 499 S.E.2d 283, 289 n.7 (W. Va. 1997). In determining
whether a defendant has negligently hired and retained an employee,
the Court should consider the following:

> When the employee was hired or retained, did the employer
> conduct a reasonable investigation into the employee's
> background vis a vis the job for which the employee was
> hired and the possible risk of harm or injury to
> co-workers or third parties that could result from the
> conduct of an unfit employee? Should the employer have
> reasonably foreseen the risk caused by hiring or
> retaining an unfit person?

McCormick, 503, S.E.2d at 506.

Here, the plaintiffs allege that, as operators of an
international adoption agency, the defendants breached their duties

HESLEP v. AFAA                                        1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

to investigate the backgrounds of prospective employees, to supervise them to ensure compliance with United States and Ugandan laws, and to terminate employees, such as Kagimu, who commit dishonest and criminal acts.

Contrary to the defendants' assertion that a claim of negligence requires proof of a physical injury, the plaintiffs must only show "that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff." <u>Aikens v. Debow</u>, 541 S.E.2d 576, 580 (W. Va. 2000). Therefore, the Hesleps have plausibly alleged that AFAA owed them a duty to investigate and monitor the activities of employees hired to facilitate an international adoption, and breached this duty by hiring and retaining Kagimu. Accordingly, they have sufficiently plead Counts Four and Six.

**2.**

As to Count Five, however, West Virginia does not recognize a standalone claim for negligent training or supervision. <u>Webb v. Raleigh Cnty. Sheriff's Dep't</u>, 761 F. Supp. 2d 378, 397 (S.D.W. Va. 2010); <u>Taylor v. Cabell Huntington Hosp., Inc.</u>, 538 S.E.2d 719, 725 (W. Va. 2000). Instead, a claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised. <u>Taylor</u>, 538 S.E.2d at 725. Here, the Hesleps have

30

HESLEP v. AFAA                                          1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

alleged that AFAA's failure to supervise its employees resulted in
their commission of "criminal acts and civil torts." (Dkt. No. 3 at
¶ 108). The only criminal acts or civil torts alleged in the
complaint are Kagimu's acts of intentional fraud. The plaintiffs,
therefore, have not alleged negligence by Kagimu or any other AFAA
employee, as required to sustain a cause of action for negligent
supervision.

    With respect to Count Seven, West Virginia does not recognize
a claim of negligent administration of a program. Moreover, to the
extent the plaintiffs intended to assert a separate cause of action
of negligent supervision, this claim fails for the reasons
discussed earlier. See <u>Taylor</u>, 538 S.E.2d at 725. Accordingly,
Counts Five and Seven are dismissed.

                              **F.**

    Finally, AFAA argues that Count Eight fails to state a claim
of negligent infliction of emotional distress, which "generally
must be premised on conduct that unreasonably endangers the
plaintiff's physical safety or causes the plaintiff to fear for his
or her physical safety." <u>Brown v. City of Fairmont</u>, 655 S.E. 2d
563, 569 (W. Va. 2007) (quoting <u>Lipton v. Unumprovident Corp.</u>, 10
A.D.3d 703 (N.Y. App. Div. 2004)). The Hesleps have not pleaded a
physical injury or any fear thereof, and while the Supreme Court of

                               31

HESLEP v. AFAA                                          1:11CV56

<u>MEMORANDUM OPINION AND ORDER</u>

Appeals of West Virginia has recognized a few narrow exceptions to the general rule, none are applicable here. <u>See</u> Syl. pt. 2, <u>Ricottilli v. Summersville Mem'l Hosp.</u>, 425 S.E.2d 629 (W. Va. 1992) (sustaining negligent infliction of emotional distress claim where hospital caused a decedent's family members to believe they had inherited a terminal disease). Accordingly, the plaintiffs have not alleged a plausible claim for negligent infliction of emotional distress, and Count Eight must be dismissed.

**V.**

For the reasons discussed, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** the defendants' first Motion to Dismiss (dkt. no. 42) as follows:

   a. **GRANTS** the motion to dismiss the Board for lack of capacity to be sued and **DISMISSES** the Board **WITH PREJUDICE;**

   b. **DENIES WITHOUT PREJUDICE** the motion to dismiss the individual directors for lack of personal jurisdiction and improper service of process;

   c. **DENIES** the motion to dismiss Counts One, Two, Three, Four, and Six;

   d. **GRANTS** the motion to dismiss Counts Five, Seven, and Eight, and **DISMISSES** Counts Five, Seven, and Eight **WITHOUT PREJUDICE;**

32

HESLEP v. AFAA                                                    1:11CV56

**MEMORANDUM OPINION AND ORDER**

   2. **DENIES** the defendants' second Motion to Dismiss (dkt. no. 57); and

   3. **SCHEDULES** a scheduling conference on **Monday, September 17, 2012 at 1:00 P.M.** If the parties wish to appear by telephone, the Court directs lead counsel for the plaintiff to coordinate the conference call with all parties and the Court at **(304)624-5850.**

   It is so **ORDERED.**

   The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: August 27, 2012

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE